IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) Civil Action No. _____ |
| Plaintiff, | ) ) ) |
| v. | ) ) **COMPLAINT** |
| APPLIED VACUUM TECHNOLOGY, INC., | ) ) **Jury Trial Demanded** |
| Defendant. | ) ) |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Larry Kating who was adversely affected by such practices. As alleged with greater specificity below, Applied Vacuum Technology, Inc. (the "Employer") terminated Kating because it regarded him as having a mental impairment that substantially limited him in his ability to think and/or to work. The Employer violated the Americans With Disabilities Act by terminating Kating based on his disability.

## JURISDICTION AND VENUE

1.  Jurisdiction is proper. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. The action is authorized by Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a),

1

which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Minnesota  See Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

### PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all times relevant to this action, Defendant, Applied Vacuum Technology, Inc. ("Employer") was a Minnesota corporation, continuously conducted business in the State of Minnesota and the City of Waconia, and continuously employed at least fifteen people.

5. At all times relevant to this action, Defendant Employer was continuously an employer engaged in an industry affecting commerce under Section 101(5) of the

ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all times relevant to this action, Defendant Employer was a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## CONDITIONS PRECEDENT

7. All conditions precedent to the institution of this lawsuit have been fulfilled. Fed. R. Civ. P. 9(c).

   a. More than thirty days prior to the institution of this lawsuit, Larry Kating filed a charge with the Commission alleging violations of Title I of the ADA by Defendant Employer.

   b. On May 4, 2012, the Commission found cause to determine that Defendant Employer had violated the Americans With Disabilities Act by discriminating against Kating based on disability in his discharge.

   c. On May 4, 2012, the Commission invited Defendant Employer and Kating to engage in conciliation.

   d. On August 23, 2012, the Commission informed the parties that it was unable to secure an acceptable conciliation agreement from Defendant Employer.

## STATEMENT OF CLAIMS

8. On or about January 4, 2008, Larry Kating began working for Defendant Employer in the Shipping and Receiving Department.

9. Kating performed his job well. On or about May 5, 2008, Defendant Employer promoted Kating to Supervisor of its Shipping and Receiving Department. The offer letter told Kating that he would be responsible for a variety of tasks, including: planning shipping activities, ensuring that parts were properly packaged and equipment properly maintained, organizing workflow, inspecting and processing incoming material, and making appropriate shipping arrangements with outside services.

10. As part of his promotion, Defendant Employer increased Kating's rate of pay from $14.00 per hour to $19.00 per hour and declared him eligible to receive retirement and health benefits beginning in the summer of 2008.

11. On or about May 2008, Kating was receiving medication and treatment for depression. His depression did not adversely affect his work. Kating left work early one day to receive treatment. He was not reprimanded for leaving work early at that time.

12. On or about Sunday, October 12, 2008, Kating overdosed on his anti-depression medication. While in the hospital, Kating suffered respiratory and cardiac complications. Kating was released from the hospital on October 20, 2008.

13. Defendant Employer knew that Kating was in the hospital. Kating's wife notified Defendant Employer that Kating had been admitted to the hospital and told Defendant Employer about Kating's serious condition.

14. At no time did Defendant Employer tell Kating's wife to call in on a daily basis to report Kating's condition. At no time did Defendant Employer tell Kating's wife to notify it on any periodic basis about Kating's condition.

15. On October 20, 2008, Kating was released from the hospital with no restrictions placed on his activities by his doctors.

16. On or about October 21, 2008, Kating talked to Teresa Hunter, the Administrative Manager of Defendant Employer. She told Kating that Daniel Korolchuk. Defendant Employer's president and owner, wanted to meet with him.  Hunter told Kating that he should bring his medical release form to the meeting.

17. On or about October 22, 2008, Kating attended a meeting with Mr. Korolchuk.  Kating brought a full release to return to work without restrictions.

18. Despite Kating's release to work, Korolchuk terminated Kating's employment.

19. Korolchuk has asserted that Kating was mentally unstable and that he hid his disability.

20. Defendant Employer fired Kating because it believed that he was substantially limited in the major life activities of thinking and of working, as shown by the foregoing, and specifically as shown by the following:

    a. Defendant Employer knew that Kating had been released to work without medical restrictions, but refused to let him come back.

    b. Defendant contended that Kating hid his disability from it;

    c. Defendant Employer contended that Kating worked around machinery and it couldn't have someone who was "mentally unstable" working around dangerous equipment.

21. Because Defendant believed that Kating had a mental impairment substantially limited his ability to think rationally or stably, Defendant Employer believed that Kating was substantially limited in the major life activity of thinking.

22. Because Defendant Employer believed that Kating had a mental impairment that substantially limited his ability to work in a jobs involving machinery, including a class of manufacturing jobs or broad range of manufacturing jobs, Defendant Employer regarded Kating as substantially limited in the major life activity of working.

23. Although Employer Defendant has contended that it fired Kating because he violated the "no call/ no show" policy, Employer Defendant's rational is pretextual, as shown by the foregoing paragraphs, and specifically as shown by the following:

    a. At all times relevant to this action, Defendant Employer had no formal written policies regarding its leave policy or any policy regarding "no call/no show."

    b. Kating was never informed that he had to call in every day of a previously unscheduled absence.

    c. Defendant Employer knew the reason for Kating's absence.

    d. Defendant Employer never told Kating's wife or any of Mr. Kating's other family members that they should call in for Kating.

    e. On information and belief, other employees were not immediately fired because they did not call in every day of an absence.

24. Based on the facts plead in paragraphs 8 through 23, and based on those to be developed during discovery and proved at trial, Defendant Employer unlawfully

6

terminated Larry Kating because of his perceived disability in violation of Section 102(a) of Title I of the ADA, 42 U.S.C. § 12112(a).

25. Based on the facts plead in paragraphs 8 through 23, and based on those to be developed during discovery and proved at trial, Defendant Employer's actions were intentional.

26. Based on the facts plead in paragraphs 8 through 23, and based on those to be developed and proved at trial, Defendant Employer's acts were done with malice or with reckless indifference to the federally protected rights of Larry Kating. Defendant Employer refused to consider Larry Kating's abilities but fired him based on myths, fears, and stereotypes about persons with mental health conditions in violation of the Americans With Disabilities Act.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, Applied Vacuum Technology, Inc., its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against persons who have or who it regards as having a mental health condition by terminating based on their actual, record of, or perceived disability.

B. Order Defendant Applied Vacuum Technology to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, including qualified persons who are regarded as

having disabilities because of actual or perceived mental health impairments, and which eradicate the effects of its past and present unlawful employment practices.

C.   Order Defendant Applied Vacuum Technology to make whole Larry Kating, providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited, to rightful place reinstatement of Kating.

D.   Order Defendant Applied Vacuum Technology to make whole Larry Kating providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above.

E.   Order Defendant Applied Vacuum Technology make whole Larry Kating providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including emotional pain, suffering, inconvenience, loss of enjoyment, and humiliation, in amounts to be determined at trial. in amounts to be determined at trial.

F.   Order Defendant Applied Vaccum Technology to pay Larry Kating punitive damages for its malicious and reckless conduct, as described in the paragraphs above, in amounts to be determined at trial.

G.   Grant such further relief as the Court deems necessary and proper in the public interest.

H.   Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, N.E.
Washington, D.C.  20507


Dated:  9/26/2012                           s/John C. Hendrickson                       .
                                            John C. Hendrickson
                                            Regional Attorney


Dated:  9/26/2012                           s/Jean P. Kamp
                                            Jean P. Kamp
                                            Associate Regional Attorney

                                            Equal Employment Opportunity Commission
                                            Chicago District Office
                                            500 West Madison Street, Suite 2000
                                            Chicago, IL 60661
                                            (312) 869-8116
                                            jean.kamp@eeoc.gov

Dated: 9/26/2012

s/Laurie A. Vasichek

Laurie A. Vasichek  
Minnesota Bar Number 0171438  
Attorney for Plaintiff  
Equal Employment Opportunity Commission  
Minneapolis Area Office  
330 Second Avenue South, Suite 720  
Minneapolis, MN 55401  
Telephone:  (612) 335-4061  
Fax:  (612) 335-4044  
laurie.vasichek@eeoc.gov

ATTORNEYS FOR PLAINTIFF